NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| PAUL A. VILLALOBOS,<br><br>                      Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>                      Defendant. | Civil Action No. 18-15614 (SDW)<br><br>**OPINION**<br><br>January 7, 2020 |

**WIGENTON,** District Judge.

Before this Court is Plaintiff Paul A. Villalobos' ("Plaintiff") appeal of the final administrative decision of the Commissioner of Social Security ("Commissioner"). Specifically, Plaintiff appeals Administrative Law Judge Sharon Allard's ("ALJ" or "ALJ Allard") denial of his claim for supplemental security income under the Social Security Act (the "Act"). This appeal is decided without oral argument pursuant to Federal Rule of Civil Procedure 78. This Court has subject matter jurisdiction pursuant to 42 U.S.C. § 405(g). Venue is proper under 28 U.S.C. § 1391(b). For the reasons set forth below, this Court finds that ALJ Allard's factual findings are supported by substantial credible evidence and that her legal determinations are correct. Therefore, the Commissioner's decision is **AFFIRMED**.

1

## I. PROCEDURAL AND FACTUAL HISTORY

### A. Procedural History

On May 30, 2014, Plaintiff filed an application for supplemental security income ("SSI"), alleging disability as of May 1, 2007, due to cervical and lumbar degenerative disc disease, herniated discs, pain in legs, and post-traumatic stress disorder. (Administrative Record [hereinafter Tr.] 16, 169, 195, 218.) His claim was initially denied on October 3, 2014, and again on reconsideration on March 24, 2015. (Tr. 16, 109-13, 114-16.) On March 8, 2017, Plaintiff appeared with counsel and testified at an administrative hearing in Newark, New Jersey, before ALJ Allard. (Tr. 16, 42-70.) Vocational Expert Lisa Gagliano ("VE Gagliano") also testified at the hearing. (Tr. 16, 42, 61-66.) On June 29, 2017, ALJ Allard issued an unfavorable decision ("June 29 Decision"), finding that Plaintiff was not disabled under § 1614(a)(3)(A) of the Act since May 30, 2014, and denied his application for supplemental security income. (Tr. 13-30.) On September 5, 2018, the Appeals Council denied Plaintiff's request for review. (Tr. 1-6.)

### B. Factual History

#### 1. Personal and Employment History

Plaintiff was born on February 5, 1968 and was thirty-nine years old at the alleged onset of his disability. (*See* Tr. 47, 169.) He graduated from high school and attended some college but did not receive a degree. (Tr. 47.) Plaintiff last worked sometime between 2004 and 2006 as a travel agent. (Tr. 48, 195, 206-07.)

#### 2. Physical Medical History

The record demonstrates that medical practitioners examined, consulted, and treated Plaintiff for the symptoms associated with his disability claim. The following is a summary of the evidence.

Plaintiff contends he suffers from cervical and lumbar degenerative disc disease, herniated discs, pain in legs, and post-traumatic stress disorder. (Tr. 218.) Plaintiff's injuries allegedly stem from a 2003 automobile accident and a 2012 work-related injury, causing back pain radiating to his knees and feet. (Tr. 21, 50, 457, 469.)

The record shows that at least from 2011 to 2017, Dr. Kamran Tasharofi ("Dr. Tasharofi") was Plaintiff's primary doctor. (*See, e.g.*, Tr. 345, 655-57.) Dr. Tasharofi's August 18, 2011 report noted Plaintiff's history of hypertension, lower back pain, herniated disc, and anxiety, and diagnosed him with malaise and fatigue, morbid obesity, benign hypertension, and lumbosacral neuritis. (Tr. 346-47.) In an August 19, 2014 report, Dr. Tasharofi noted Plaintiff's complaints of worsening back pain sustained from a minor car accident weeks before, and noted additional diagnoses of pure hypercholesterolemia, chronic pain, allergic rhinitis, and aortic atherosclerosis. (Tr. 277-79; 324-326 (listing these additional diagnoses as early as 2012.) Plaintiff was prescribed Xanax and Oxycodone-acetaminophen. (Tr. 280.)

During this time, Dr. Tasharofi conducted two reports on Plaintiff's ability to work on October 23, 2014 and on February 27, 2017. (Tr. 469-71, 490-91.) In the first report, Dr. Tasharofi found Plaintiff could lift up to 25 pounds; stand or walk up to six hours per day; sit up to six hours per day; and push or pull 25 pounds. (Tr. 469-70.) In the second report, Dr. Tasharofi noted that Plaintiff's symptoms interfere with his ability to perform simple, work-related tasks, including his ability to concentrate, to sit or stand for extended periods of time, and an inability to lift over 20 pounds or more in a work situation. (Tr. 490-91.) Other doctors treated Plaintiff around 2014 as well.[1]

---

[1] On September 30, 2014, Dr. Rambhai Patel ("Dr. Patel") diagnosed Plaintiff with status post contusion of the cervical, thoratic, and lumbar spine with persistent pain; hypertension; anxiety and depression syndrome; and a history of gout. (Tr. 457-58.) Dr. Patel reported that Plaintiff had a reduced range of motion for his cervical and lumbar spines, but found Plaintiff could walk at a reasonable pace. (Tr. 459-60.) Around December 2014, Dr.

On December 8, 2015, Plaintiff had an MRI to evaluate his cervical and lumbar spines. (Tr. 492-93.) The results of the cervical MRI showed mild multilevel cervical disc degeneration. The lumbar MRI showed transitional lumbosacral vertebra, and disc protrusions at various points. (Tr. 493.)

Plaintiff additionally was treated for gout on August 2, 2016, by Dr. Edwin Roman ("Dr. Roman"). Dr. Roman's report noted a history of gout and that Plaintiff is highly suspicious of another gouty attack to his ankle. (Tr. 494.) Plaintiff complained of gout again on October 31 and November 10, 2016, and was treated by Dr. Roman. (Tr. 499.) There is no further evidence in the record showing significant treatment or limitations due to gout. (*See* Tr. 18.)

### 3. Psychological Medical History

Plaintiff was diagnosed with anxiety disorder and major depressive disorder around March 29, 2011, after receiving psychological treatment at Trinitas Hospital. (Tr. 451.) On October 1, 2014, Plaintiff undertook a psychological evaluation conducted by Dr. Steven Yalkowsky ("Dr. Yalkowsky"). (Tr. 461-63.) Plaintiff had complained of depression and panic attacks and reported taking Vybrid, Ambien, and Xanax. (Tr. 461.) Dr. Yalkowsky reported that Plaintiff "was able to recall information" and "comprehend all communication" with "minimal need for repetition," but "appeared to experience concentration difficulties," which were "likely attributable . . . to his mental health difficulties," and Dr. Yalkowsky found that Plaintiff met "the diagnostic criteria for adjustment disorder with chronic depressed mood." (Tr. 462-63.)

Plaintiff was also examined by Caroline Mercun-Murray, APN, from Trinitas Regional Medical Center, who diagnosed him with major depressive disorder in a report dated April 16,

---

Edward Somma ("Dr. Somma") noted that Plaintiff had a history of lumbar spinal pain and a painful range of movement, and that Plaintiff can lift up to 20 pounds, stand and walk up to six hours, sit up to six hours, and push or pull more than 25 pounds. (Tr. 93.)

4

2014. (Tr. 353.) She opined that Plaintiff could not work full-time or part-time in a WorkFirst NJ program ("WFNJ") activity, from April 16, 2014 to April 16, 2015. (Tr. 353-54.)[2]

### 4. Function Report

Plaintiff submitted function reports on August 25, 2014, and December 3, 2014 ("Two Functions Reports"). (Tr. 210-217, 230-237.) The reports are largely consistent with each other. Plaintiff stated his injuries affected his ability to lift, walk, climb stairs, squat, bend, kneel, and stand, and affected his memory, concentration, ability to follow instructions, get along with others, and ability to complete tasks. (Tr. 214-15, 234-35.) In the August report, he attributed these limitations to his cervical and lumbar spine injuries, in addition to his depression. (Tr. 215.) Plaintiff stated he can take care of his own personal hygiene, but is sometimes too depressed to bother, and that it is difficult for him to dress or bathe due to pain. (Tr. 211, 231.)

Plaintiff stated he does some limited chores and sometimes goes outside, either walking, using public transportation, or riding in a car. (Tr. 212-13, 232-33.) He goes to the doctors, laundromat, and store on a regular basis. (Tr. 214, 234.) When he walks, however, he stated he can only do so for one to two blocks before needing to rest five to ten minutes. (Tr. 215, 235.) He additionally stated that he can pay attention for up to five minutes. (Tr. 215, 235.)

Plaintiff is able to handle his own finances, and his ability to handle money has not changed since his injuries. (Tr. 213, 233.) He uses a back brace, which was prescribed about four to five years prior. (Tr. 216, 236.)

### 5. Hearing Testimony

---

[2] The ALJ ultimately assigned little weight to Nurse Mercun-Murray's findings, noting that the WFNJ requirements to determine disability are different from those under the Social Security program, and that Mercun-Murray did not sufficiently conduct a functional assessment of Plaintiff's abilities and limitations. (Tr. 27.)

5

ALJ Allard held a hearing on March 8, 2017, during which Plaintiff and VE Gagliano testified. (Tr. 16, 42-70.) Plaintiff testified that he stopped work around 2004, after a car accident in 2003 caused persistent back pain which spread to his knees and feet. (Tr. 49-50.) Dr. Tasharofi treats his pain, for which Plaintiff has taken Percocet for the past five years. (Tr. 51-52.) The medication, Plaintiff testified, negatively affects his concentration and requires him to take at least two naps a day. (Tr. 52.) Plaintiff stated that his back problems allow him to stand for five to ten minutes, before pain sets in, that he can only walk one or two blocks before he needs to take a break, and that he can only sit comfortably for five to fifteen minutes. (Tr. 58, 61.) He states he can only lift a gallon of milk comfortably, without causing back problems. (Tr. 59-60.)

Plaintiff additionally testified that he saw Dr. Roman for gout, which affects his right ankle and foot. (Tr. 52-53.) He testified that he has had gout for at least seven years, and when it acts up, around twice a year, it lasts for at least ten days, during which he cannot stand. (Tr. 52-54.)

Plaintiff also testified that he was treated for major depression, panic attacks, and anxiety. (Tr. 54-55.)[3] When asked what was preventing him from going back to work as a travel agent, Plaintiff testified that his issues concentrating prevents him from doing so. (Tr. 61.)

VE Gagliano testified that a hypothetical individual sharing Plaintiff's vocational characteristics and limitations, as specified by the ALJ, would not be able to conduct Plaintiff's past work as a travel agent. (Tr. 62-63.) However, VE Gagliano testified that there would be other work available in the national economy for the hypothetical individual, such as a final assembler, visual inspector, or document preparer, if he is off task by 5%. (Tr. 63-64.)

## II.  LEGAL STANDARD

### A. Standard of Review

---

[3] Plaintiff was treated at the Trinitas Clinic for his mental health issues, but testified that he had not gone in about a year. (Tr. 55.)

6

In Social Security appeals, this Court has plenary review of the legal issues decided by the Commissioner. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). However, this Court's review of the ALJ's factual findings is limited to determining whether there is substantial evidence to support those conclusions. *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).

Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal citation and quotations omitted). Substantial evidence is "less than a preponderance of the evidence, but 'more than a mere scintilla.'" *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Importantly, "[t]his standard is not met if the Commissioner 'ignores, or fails to resolve, a conflict created by countervailing evidence.'" *Id.* (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)). However, if the factual record is adequately developed, "the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Daniels v. Astrue*, No. 4:08-cv-1676, 2009 WL 1011587, at *2 (M.D. Pa. Apr. 15, 2009) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966) (internal quotation marks omitted)). "The ALJ's decision may not be set aside merely because [a reviewing court] would have reached a different decision." *Cruz v. Comm'r of Soc. Sec.*, 244 F. App'x 475, 479 (3d Cir. 2007) (citing *Hartranft*, 181 F.3d at 360). This Court is required to give substantial weight and deference to the ALJ's findings. *See Scott v. Astrue*, 297 F. App'x 126, 128 (3d Cir. 2008). Nonetheless, "where there is conflicting evidence, the ALJ must explain which evidence she accepts and which she rejects, and the reasons for that determination." *Cruz*, 244 F. App'x at 479 (citing *Hargenrader v. Califano*, 575 F.2d 434, 437 (3d Cir. 1978)).

**B. The Five–Step Disability Test**

A claimant's eligibility for social security benefits is governed by 42 U.S.C. § 1382. An individual will be considered disabled under the Act if the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" lasting continuously for at least twelve months. 42 U.S.C. § 423(d)(1)(A). The impairment must be severe enough to render the individual "not only unable to do her previous work but [unable], considering her age, education, and work experience, [to] engage in any kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). A claimant must show that the "medical signs and findings" related to ailment have been "established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged . . . . " 42 U.S.C. § 423(d)(5)(A).

To make a disability determination, the ALJ follows a five-step sequential analysis. 20 C.F.R. §§ 404.1520(a), 416.920(a); *see also Cruz*, 244 F. App'x at 480. If the ALJ determines at any step that the claimant is or is not disabled, the ALJ does not proceed to the next step. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

Step one requires the ALJ to determine whether the claimant is engaging in substantial gainful activity ("SGA"). 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). SGA is defined as work that "[i]nvolves doing significant and productive physical or mental duties . . . for pay or profit." 20 C.F.R. §§ 404.1510, 416.910. If the claimant engages in SGA, the claimant is not disabled for purposes of receiving social security benefits regardless of the severity of the claimant's impairments. *See* 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the individual is

not engaging in SGA, the ALJ proceeds to step two.

Under step two, the ALJ determines whether the claimant suffers from a severe impairment or combination of impairments that meets the duration requirement found in §§ 404.1509 and 416.909. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or a combination of impairments is not severe when medical and other evidence establishes only a slight abnormality or combination of abnormalities that would have a minimal effect on an individual's ability to work. 20 C.F.R. §§ 404.1521, 416.921; Social Security Rules ("SSR") 85-28, 96-3p, 96-4p. An impairment or a combination of impairments is severe when it significantly limits the claimant's "physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). If a severe impairment or combination of impairments is not found, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the ALJ finds a severe impairment or combination of impairments, the ALJ then proceeds to step three.

Under step three, the ALJ determines whether the claimant's impairment or combination of impairments is equal to, or exceeds, one of those included in the "Listing of Impairments" in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If an impairment or combination of impairments meets the statutory criteria of a listed impairment as well as the duration requirement, the claimant is disabled and entitled to benefits. 20 C.F.R. §§ 404.1520(d), 416.920(d). If, however, the claimant's impairment or combination of impairments does not meet the severity of the listed impairment, or if the duration is insufficient, the ALJ proceeds to the next step.

Before undergoing the analysis in step four, the ALJ must determine the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(a), 404.1520(e), 416.920(a), 416.920(e). An individual's RFC is the individual's ability to do physical and mental work activities on a sustained

9

basis despite limitations from his or her impairments. 20 C.F.R. §§ 404.1545, 416.945. The ALJ considers all impairments in this analysis, not just those deemed to be severe. 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2); SSR 96-8p. After determining a claimant's RFC, step four then requires the ALJ to determine whether the claimant has the RFC to perform the requirements of his or her past relevant work. 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f). If the claimant is able to perform past relevant work, he or she will not be found disabled under the Act. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f). If the claimant is unable to resume past work, the disability evaluation proceeds to the fifth and final step.

At step five, the ALJ must determine whether the claimant is able to do any other work, considering RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). Unlike in the first four steps of the analysis where the claimant bears the burden of persuasion, the burden shifts to the ALJ at step five to determine whether the claimant is capable of performing an alternative SGA present in the national economy. 20 C.F.R. §§ 404.1520(g)(1) (citing 404.1560(c)), 416.920(g)(1) (citing 416.960(c)); *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987). At this point in the analysis, the Social Security Administration ("SSA") is "responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that [the claimant] can do, given [the claimant's RFC] and vocational factors." 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2). If the claimant is unable to do any other SGA, he or she is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

### III. <u>DISCUSSION</u>

In the June 29 Decision, ALJ Allard properly applied the five-step disability test and determined that Plaintiff was not disabled. (Tr. 16-30.) The ALJ's findings are supported by

substantial evidence. There is no basis for reversal or remand because Plaintiff's complaints are not supported by the objective medical evidence on the record.

At step one, the ALJ determined that Plaintiff did not engage in SGA since May 30, 2014, Plaintiff's application date. (Tr. 18); *see also* 20 C.F.R. § 404.1571 *et seq.*; 20 C.F.R. § 416.920(a)(4)(i).

At step two, the ALJ found that Plaintiff had the following severe impairments: essential hypertension; disorders of the spine; obesity; and affective and anxiety disorders. (Tr. 18); *see also* 20 C.F.R. § 404.1520(c); 20 C.F.R. § 416.920(a)(4)(ii). The ALJ, however, determined that Plaintiff's gout was not severe because the record does not clearly show gout caused "significant limitations in function for twelve months." (Tr. 18.) The ALJ specifically considered Plaintiff's gout treatment by Dr. Roman, which, based on the record, lasted from August 2, 2016, to November 11, 2016. (Tr. 18; 494, 499-500). The ALJ then noted "no other evidence in the record show[s] significant treatment or limitations attributable to gout." (Tr. 18.) The ALJ's determination is supported by substantial evidence.

At step three, ALJ Allard found that Plaintiff did not have an impairment, or combination of impairments, that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 416.920(d), 416.925, 416.926; (Tr. 19-20.) She considered the listings for disorders of the spine, hypertension, and mental impairments.

Listing 1.04, which addresses disorders of the spine, requires "compromise of a nerve root" or the spinal cord, as well as additional findings, and the ALJ found that the record did not support such "requisite neurological findings" to satisfy the criteria of this listing. 20 C.F.R. pt. 404, subpt. P, app. 1, § 1.04; (Tr. 19.) The ALJ considered, among other things, Plaintiff's MRI scans, Dr. Tasharofi's diagnoses (which found Plaintiff's cranial nerves "grossly intact," that he had no

11

muscle weakness, had a "positive" straight leg test, and had a "normal" gait) and Dr. Patel's physical examination (which found a reduced range of motion, but no muscle weakness, and the opinion that Plaintiff "can walk at a reasonable pace" without the use of an assistive device). (Tr. 22-25, 278-79, 458-60, 492-93, 608.) The ALJ's finding is supported by substantial evidence.

Listing 4.00 H 1 requires evaluation of hypertension "by reference to the specific body system(s) affected (heart, brain, kidneys, or eyes)." 20 C.F.R. pt. 404, subpt. P, app. 1, § 4.00 H 1). The ALJ found the medical record does not show Plaintiff's hypertension affected other body systems, such as the heart, brain, kidneys, or eyes, and thus does not meet the listing criteria. (Tr. 19.) The ALJ appropriately considered objective medical evidence.

Paragraph B criteria of listings 12.04, which addresses depressive, bipolar, and related disorders, and 12.06, which addresses anxiety and obsessive-compulsive disorders, requires that the mental impairment result in at least one extreme, or two marked limitations in a broad area of functioning. 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(A)(2)(b); (Tr. 19, 25).[4] The ALJ's conclusion that Plaintiff's moderate limitations did not meet the Paragraph B criteria is supported by substantial evidence. (Tr. 19-20, 25-27.) The ALJ considered Plaintiff's functions reports from 2014 and Dr. Yalkowsky's psychological evaluation from 2014. These indicated Plaintiff's ability to remember simple instructions and complete routine tasks, and that he lacked cognitive impairment—for example, the ALJ noted that though Plaintiff exhibited problems recalling numbers, he reported that he could use public transportation independently, remembering his destination and which buses or trains would take him there. (Tr. 19-20, 25-26, 213, 461-63.)

At this step, Plaintiff primarily argues that the ALJ failed to consider Plaintiff's impairments in combination, particularly with his obesity. (ECF No. 13 at 11-25.) Plaintiff,

---

[4] These areas of functioning include understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting or managing oneself. (Tr. 19.)

however, must point to evidence on the record showing that his impairment, singularly or in combination, would meet or equal specific listings, and that such evidence would change the ALJ's decision. *See Holloman v. Comm'r of Soc. Sec*, 639 F. App'x 810, 814 (3d Cir. 2016) (rejecting plaintiff's argument that "certain impairments were not properly compared, separately and in combination, to the listings," when it did "not identify specific avenues for meeting or equaling specific listings that the ALJ should have considered but did not," and which "offers no explanation of how further analysis [by the ALJ] could have affected the outcome of his disability claim"); 20 C.F.R. § 416.912 (noting generally a claimant must prove disability for the administrative review process). Plaintiff failed to identify evidence showing that his weight and other impairments, in combination, met or medically equaled a listed impairment, and would change the ALJ's decision. (*See* ECF No. 13 at 18-21); *see also Richardson v. Comm'r of Soc. Sec*., Civ. No 16-8279, 2017 WL 6550482, at *7 (D.N.J. Dec. 22, 2017) (finding any error in an ALJ's consideration of plaintiff's obesity harmless given the substantial evidence, and that plaintiff "does not suggest how the outcome would have been different if the ALJ had been more thorough"); *Orta v. Comm'r of Soc. Sec.*, Civ. No. 15-6061, 2016 WL 6304437, at *4 (D.N.J. Oct. 25, 2016).

Rather, the ALJ's conclusion is supported by substantial evidence. The ALJ specifically stated she considered Plaintiff's impairments in "combination," and explicitly considered Plaintiff's weight, noting the record did not support a finding that Plaintiff was unable to work due to his weight, given that none of his treating sources limited his activities due to his weight. (Tr. 19, 28.)[5]

---

[5] Plaintiff makes similar arguments as to the ALJ's consideration of his degenerative disc disease and his mental impairments. However, Plaintiff again fails to point to evidence in the record supporting his position. (ECF No. 13 at 21-24); *see Holloman*, 639 F. App'x at 814. As discussed, the ALJ's decision on both impairments was supported by substantial evidence. (Tr. 19-20, 22-28, 213, 278-79, 458-63, 469-471, 490-93, 608.) Plaintiff also argues that the ALJ did not sufficiently address "paragraph C" criteria under listings 12.04 and 12.06. (ECF No. 13 at 22-23.) However, Plaintiff again provides no support showing that paragraph C criteria are satisfied, and this Court agrees that the substantial evidence supports the ALJ's position. (*See* Tr. 20, 94.)

Before undergoing the analysis in step four, ALJ Allard determined Plaintiff's RFC. (Tr. 20.) The ALJ properly found that Plaintiff "has the residual functional capacity to perform less than a full range of sedentary work as defined in 20 CFR [§] 416.967(a)" and concluded that Plaintiff will be off task 5% of the workday. (Tr. 20.) Specifically, the ALJ found that:

> [Plaintiff] can lift/carry and push/pull ten pounds occasionally and less than ten pounds frequently. He can sit for six hours in an eight-hour day and stand [or] walk for two hours in an eight-hour day. The claimant can occasionally climb ramps and stairs, balance, kneel, stoop, crouch and crawl. He cannot climb ladders, ropes, scaffolds, or work around hazards, including moving mechanical parts or at unprotected heights. The claimant is limited to performing tasks, which are simple and routine. He can frequently respond appropriately to supervisor's instructions and can have occasional contact with co-workers and supervisors and have incidental contact with the public but not with tasks that involve direct customer service. He can work around others, but not on tasks requiring teamwork or working in tandem and he can make simple decisions and adapt to occasional changes in essential work tasks.

(Tr. 20.) In making this determination, the ALJ considered all symptoms and the extent to which they can reasonably be accepted and consistent with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. § 416.929. (*Id.*) Specifically, the ALJ extensively cited the Two Function Reports Plaintiff submitted in 2014, (Tr. 21-22, 210-217, 230-237), in addition to treatment and evaluative records, including MRI results, psychological examination reports, and multiple reports from Plaintiff's doctors, such as Dr. Tasharofi, Dr. Patel, and Dr. Yalkowski. (*See, e.g.*, Tr. 22-25; 87-93; 95-97; 277-79; 450-451; 457-63; 490-91; 492-93; 501-05; 518-21; 601-04.) In considering the objective medical record, the ALJ found Plaintiff's treatment history "largely conservative." (Tr. 28.) In light of the substantial evidence reviewed by ALJ Allard, this Court finds that she properly determined Plaintiff's RFC.

Plaintiff argues, at this step, that the ALJ's RFC decision does not "explain the evidentiary basis" for her findings, including why Plaintiff's back impairments, weight, and gout impeded his ability to work. (ECF No. 13 at 28-31.) However, as discussed, the ALJ extensively cited evidence

14

in the record supporting her findings, and notably, Plaintiff again does not point to medical evidence in the record showing Plaintiff's obesity or gout impeded Plaintiff's ability to work. (*See, e.g.*, Tr. 18, 28, 494, 499 (showing minimal treatment on the record for gout); *see also* Tr. 469-70 (medical report finding Plaintiff could stand, walk, or sit for up to six hours per day)); *Holloman*, 639 F. App'x at 814.[6]

Plaintiff also makes similar arguments regarding the ALJ's consideration of his mental impairments. (ECF No. 13 at 31-34.) The ALJ's decision, however, is supported by substantial evidence. (Tr. 19-20.) As discussed earlier, the ALJ examined the psychiatric diagnosis made by Dr. Yalkowsky, and others, and pointed out the record lacked evidence of "significant long-term mental health treatment after 2012." (Tr. 28, 355-56; 461-63.) The ALJ further noted that depression screenings stopped as of February 10, 2017. (Tr. 28.) Plaintiff again does not provide medical evidence on the record supporting his position.[7] Plaintiff's arguments as to the ALJ's RFC findings are without merit.

At step four, the ALJ properly concluded that Plaintiff was unable to perform his past relevant work as a Travel Agent. (Tr. 28-29.) The ALJ's conclusion, relying on VE Gagliano's testimony, is supported by substantial evidence. (Tr. 28-29; 62-63.)

Thereafter, the ALJ proceeded to step five, and considering Plaintiff's age, education, work experience, and RFC, found that Plaintiff was not disabled because jobs "exist in significant numbers in the national economy that [Plaintiff] can perform." (Tr. 29.) The ALJ came to this determination after considering the testimony of VE Gagliano, who identified three sedentary jobs

---

[6] For example, regarding his gouty arthritis, Plaintiff only conclusorily states that it "[u]ndoubtedly . . . affects his ability to stand and walk," without citation. (ECF No. 13 at 31.)
[7] Plaintiff, citing the ALJ's decision, does point out that Plaintiff's "GAF" score of 50 evidences serious mental limitations. (ECF No. 13 at 34; Tr. 25.) The ALJ clearly considered this in her overall consideration of Plaintiff's mental impairments and found it outweighed by other considerations on the record. (Tr. 25-27); *see Gilroy v. Astrue*, 351 F. App'x 714, 715 (3d Cir. 2009) (noting a "GAF score does not have a direct correlation to the severity requirements of the Social Security mental disorder listings").

Plaintiff would be able to perform: Final Assembler; Visual Inspector; and Document Preparer. (Tr. 30; 63-64.)

At this step, Plaintiff argues that at the March 8, 2017 hearing, the ALJ failed to give VE Gagliano a hypothetical question which reflected "all of plaintiff's credibly established mental limitations," and so VE Gagliano's answer did not properly evaluate Plaintiff's ability to work in the national economy. (ECF No. 13 at 34-38.) However, the ALJ is not required "to submit to the vocational expert every impairment *alleged* by a claimant"; rather, the "hypotheticals posed must 'accurately portray' the claimant's impairments and that the expert must be given an opportunity to evaluate those impairments 'as contained in the record.'" *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005). As already discussed, the ALJ examined Plaintiff's mental impairments at length, and found them "for the most part all negative." (*See* Tr. 25-28.) The ALJ's hypothetical question sufficiently incorporates her medically supported finding that Plaintiff's mental impairments were "moderate," when she asked VE Gagliano to consider an individual who, among other things, is "limited to tasks which are simple and routine," and who can "have occasional contact with coworkers and supervisors," but cannot do "tasks that involve direct customer service." (Tr. 62-63); *see Winters v. Comm'r of Soc. Sec.*, Civ. No. 15-01357, 2015 WL 8489958, at *10 (D.N.J. Dec. 9, 2015). The ALJ's hypothetical question to VE Gagliano was proper.

After properly following the 5-step disability test, ALJ Allard properly determined that Plaintiff is not disabled under the Act. The ALJ's decision is supported by the substantial credible evidence.

IV. **CONCLUSION**

Because this Court finds that ALJ Allard's factual findings were supported by substantial credible evidence in the record and that her legal conclusions were correct, the Commissioner's decision is **AFFIRMED**.

s/ *Susan D. Wigenton*
**SUSAN D. WIGENTON**
**UNITED STATES DISTRICT JUDGE**

Orig: Clerk
cc: Parties